UNITED FURNITURE AND APPLIANCE COMPANY, Appellant,

v.

Charles JOHNSON et ux., Appellees.

No. 483.

Court of Civil Appeals of Texas, Tyler.

June 25, 1970.

Rehearing Denied July 16, 1970.

Kenley, Boyland, Hawthorn & Starr, Larry W. Starr, Longview, for appellant.

Bill Wilder, Henderson, Richard W. Fairchild, Nacogdoches, for appellees.

DUNAGAN, Chief Justice.

This is a suit for damages resulting from personal injuries arising out of an automobile accident. The original suit was filed against Jessie David Floyd, the driver of the vehicle with whom the plaintiff collided, and his employer, United Furniture and Appliance Company (appellant). Jessie David Floyd was not represented by an attorney at the trial of the case and is not a party to this appeal. Before the trial, the plaintiffs (appellees) impleaded State Farm Mutual Automobile Insurance Company, asserting a claim to "uninsured motorist" benefits upon the basis that Jessie David Floyd was an uninsured motorist. United Furniture and Appliance Company primarily defended the case upon the basis that Jessie David Floyd was not acting within the course and scope of his employment at the time the accident occurred.

The suit was tried to a jury and judgment was entered upon the jury verdict in favor of the plaintiffs-appellees against Jessie David Floyd and United Furniture and Appliance Company. Judgment was also entered in favor of the plaintiffs-appellees against State Farm Mutual Automobile Insurance Company. A separate appeal has been perfected by State Farm Mutual Insurance Company under Cause No. 473 in this Court. Appellant United Furniture and Appliance Company appeals from the overruling of its motions for instructed verdict by the trial court, the overruling of its motion for judgment notwithstanding the jury verdict, and the overruling of its amended motion for new trial following entry of judgment.

Upon the jury verdict judgment was rendered for appellees against United Furniture and Appliance Company, appellant in this case, in the sum of $54,400.00 and against State Farm Mutual Automobile Insurance Company in the sum of $10,000.-00, with interest at the rate of six per cent (6%) per annum from the date of the judgment.

Appellant first contends there is "no evidence" or there is "insufficient evidence" to support the finding of the jury that Jessie David Floyd was acting within the course and scope of his employment at the time of the accident in question.

## STATEMENT OF FACTS

United Furniture and Appliance Company was in the business of selling furniture, appliances, rugs and things of that nature, and normally delivered the merchandise it sold.

D. M. Willeford was secretary-treasurer, buyer, salesman, and general manager of United Furniture and Appliance Company.

Jessie David Floyd was United Furniture and Appliance Company's general delivery man who had been hired to do virtually anything his employer wanted done. Generally, his duties consisted of making deliveries, repairs, doing various "odds and ends" around the store and doing anything else he was told to do.

Floyd's immediate superior, Willeford, had the right to hire and fire employees and, specifically, he had and exercised the right to direct Floyd's daily activities for

United Furniture even down to the "minutest" detail of Floyd's work. According to Willeford's specific testimony, he had hired Floyd to do "* * * anything that I wanted done." If Willeford asked Floyd to do something, it was understood that Floyd was to obey the order; otherwise, Willeford had the right to dismiss him.

On the day of the accident, Willeford told Floyd to deliver a step ladder and a vacuum cleaner, owned by United Furniture to Willeford's home. The ladder and vacuum cleaner were to be used by Johnny Fincher, an employee of United Furniture —its floor-covering and draperies man— who was hanging draperies in Willeford's recently purchased home. While working at the Willeford home, Fincher was on "company business" and was on United Furniture's payroll.

Floyd put the step ladder and the vacuum cleaner in his own personal car and proceeded to deliver them to the home of Willeford as he had been directed to do by Willeford. Floyd testified that he put the ladder and vacuum cleaner in his own personal automobile to make the delivery because it was raining and he did not want to get these items wet. While proceeding to make the delivery in his personal automobile on a direct route from United Furniture and Appliance Company's store to the Willeford's home, the automobile in which he was driving collided with an automobile in which Mrs. Johnson was an occupant.

While United Furniture owned delivery trucks which Floyd could have used, he was not specifically instructed to use one of them to make the delivery in question. He was only told to deliver the items to the Willeford home. Moreover, Floyd had not been told by his employer that he must use the company trucks to make deliveries, nor had he ever been told or even requested by his employer not to use his personal car in making deliveries. While it was Willeford's intention that Floyd should use United Furniture and Appliance Company's pickup trucks to deliver the step ladder and vacuum cleaner, he did not express this intention to Floyd; he just assumed that Floyd would go in one of the pickup trucks. Upon United Furniture learning after the accident that Floyd had used his own automobile in making the delivery, he (Floyd) was never reprimanded or rebuked in any way for doing so. Floyd was not docked by United Furniture for the time he spent on the trip to the Willeford home on the occasion involved. Floyd was paid on an hourly basis and was paid by United Furniture for the trip to the Willeford home on the occasion of the accident. Willeford at no time paid Floyd anything for making that trip from his own funds.

Floyd testified that he had no personal reason whatsoever for taking his own car. There is evidence in the record that the delivery of the items for his employer was his only motivation for the trip on the occasion in question and at the time of the collision he was doing what he had been hired by United Furniture to do and told to do by Willeford.

The accident which formed the basis for this lawsuit occurred during Floyd's normal working hours for United Furniture and Appliance Company.

In fact, both Willeford and Floyd believed, and so testified that, in making the trip in question, Floyd was doing one of the specific things he had been hired to do.

On the occasion in question there was nothing mechanically wrong with Floyd's automobile which caused the collision. His automobile was in A–1 mechanical condition. It was in as good mechanical condition as the pickups that the company owned. As a matter of fact, the pickups owned by United Furniture did not have any power brakes and Floyd's automobile did.

The evidence revealed that United Furniture carried a policy of liability insurance which indemnified it against bodily injury and property damage liability which it was "* * * legally obligated to pay * * *

as the result of * * * the ownership, maintenance or use * * * of *any* automobile." (Emphasis ours.)

As above stated Willeford at no time instructed or requested that Floyd use only United Furniture vehicles, or that Floyd should not use his personal automobile, in discharging the duties of his employment. The reason why Willeford did not do so could well be because the policy of insurance carried by United Furniture covered not only company-owned vehicles but also "any automobile" used by United Furniture employees in the course and scope of their employment and was in such amounts as to fully protect United Furniture against liability for damages. Therefore, it would make no difference to Willeford whether a company vehicle or an employee's privately-owned automobile was used on company business.

Even though the automobile used to make the delivery on the occasion in question belonged to Floyd, nevertheless, since Floyd on the occasion involved was engaged in the performance of duties assigned to him by United Furniture and United Furniture had the right to control the "minutest" details of Floyd's activities in the performance of such duties, United Furniture had the right to control the manner in which Floyd operated his automobile on the occasion in question.

The evidence seemed to show without dispute that Johnny Fincher was employed by United Furniture as its floor covering and draperies man; that Willeford was having draperies hung in his home and that Floyd was to deliver the step ladder and vacuum cleaner to Willeford's home to be used there by Fincher. Willeford having testified that Fincher was at his home on "company business", we think under the evidence it becomes rather apparent that Fincher was to use the step ladder in hanging draperies purchased from United Furniture by Willeford which were delivered and to be installed by United Furni-

ture and was to use the vacuum cleaner in cleaning up the mess made in the process of hanging the draperies.

It seems to be without doubt Floyd was impliedly authorized to use an automobile in delivering the step ladder and vacuum cleaner. This is manifest from the very nature of the service he was to perform. It was certainly not intended nor expected that he should carry such bulky and unwieldy objects on foot. The means of making delivery of such objects in this day and time is commonly by automobile.

## OPINION

It suffices to say that consideration of appellant's points has required us to examine the entire statement of facts, and we have so conducted our examination of the record in the light of the rules announced by the Supreme Court in In Re: Kings Estate, 150 Tex. 662, 244 S.W. 2d 660. In determining the "no evidence" question, which is one of law, we may consider only that evidence, if any, which viewed in its most favorable light, supports the jury findings, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359 (Sup.Ct., 1957). In determining the "insufficient evidence" question, which is one of fact, we consider and weigh all the evidence in the case to determine whether the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. We deem the evidence to be sufficient to support the jury's finding that Jessie David Floyd was in the course and scope of his employment at the time of the accident in question and said finding of the jury is not contrary to the overwhelming weight and preponderance of the evidence. Appellant's contention is overruled.

The appellant, United Furniture and Appliance Company, also complains of the trial court's action in overruling its objection and exception to special issue number

18 [1] as submitted by the trial court in its charge to the jury.

 The evidence in the case shows that Mrs. Johnson at the time of the accident in question did not have her seat belt fastened. The substance of the appellant's complaint is that the court in the damage issue number 18 should have confined the consideration of the jury to "such injuries as were proximately caused by negligence on the part of Jessie David Floyd". We think the objection was properly overruled by the trial court.

 The evidence did not raise the issue that Mrs. Johnson's failure to have her seat belt fastened proximately caused any damage to her, and therefore the trial court did not err in refusing to instruct the jury that it should not award any damages proximately caused by the failure of Mrs. Johnson to have her seat belt fastened. The evidence shows nothing more than that Mrs. Johnson did not have her seat belt fastened at the time of the accident. There is no evidence that she suffered injury she would not have suffered or that her injuries were more severe than would otherwise have been the case, had she had her seat belt fastened. The burden is on a defendant claiming mitigation of damages not only to prove the lack of diligence on the part of a plaintiff, but also the amount by which the damages were increased by such failure. The appellant-defendant has failed to discharge this burden. Goedecke, Inc. v. Henderson, 388 S.W.2d 728, 730 (Tex.Civ.App., Amarillo, 1965, writ ref., n. r. e.) ; Tom Brown Drilling Company v. Nieman, 418 S.W.2d 337, 340–341 (Tex. Civ.App., Eastland, 1967, writ ref., n. r. e.) ; Hardison v. Beard, 430 S.W.2d 53, 57 (Tex. Civ.App., Dallas, 1968, writ ref., n. r. e.) ; Henderson v. Goedecke, Inc., 430 S.W.2d 120, 123 (Tex.Civ.App., Tyler, 1968) and

cases cited therein; Stanley Manly Boys' Clothes, Inc. v. Hickey, 113 Tex. 482, 259 S.W. 160 (1924) ; International & G. N. R. Co. v. Sandlin, 57 Tex.Civ.App., 122 S.W. 60, 62 (1909, writ ref.) ; Blocher v. McArthur, 303 S.W.2d 529, 534–535 (Tex. Civ.App., Austin, 1957, writ ref., n. r. e.) ; 17 Tex.Jur.2d, p. 114, sec. 36.

Upon a careful examination of the entire record we cannot say that the evidence is insufficient to support the answer of the jury to special issue number 18 nor that the answer thereto is contrary to the overwhelming weight and preponderance of the evidence nor that said finding is excessive. We have considered each of appellant's points of error. They are overruled.

Judgment affirmed.

---

1. "What sum of money, if any, if paid now, in cash, do you find from a preponderance of the evidence, would fairly and reasonably compensate Plaintiffs for the personal injuries to Mrs. Peggy John-

son, if any, directly and proximately caused by the collision in question?
"Answer by stating the amount, if any, in 'dollars' and 'cents'.
"ANSWER: $50,000 dollars".