STOLTE et al. v. KARREN et al. (No. 5817.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 29, 1916. On Motion for Rehearing, Jan. 31, 1917.)

1. EXECUTION ⟫171(2)—INJUNCTION—ADEQUATE REMEDY AT LAW—STATUTE—"CLOUD WOULD BE PUT ON TITLE."

Under Rev. St. art. 4643, prescribing when writs of injunction shall be granted, subdivision 3, providing that judges of the district court may grant writs of injunction where a cloud would be put on the title of real estate being sold under an execution against a person having no interest subject to the execution at the time of the sale, irrespective of any legal remedy at law, the remedy of injunction should not be denied a wife, her husband's grantee, against the husband's creditor, seeking to sell the property on execution, on the ground that the wife has an adequate remedy at law precluding the equitable remedy, since the phrase "cloud would be put on the title," as used in the statute, means a claim of a right in lands, the density of the cloud, since the enactment of the statute, being immaterial to the right to injunction (citing 2 Words and Phrases, 1233).

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 498, 499; Dec. Dig. ⟫171(2).

For other definitions, see Words and Phrases, First and Second Series, Cloud on Title.]

2. EXECUTION ⟫171(4)—INJUNCTION—SALE ON EXECUTION—CLOUD ON TITLE.

A sale on execution, to satisfy a judgment against a husband in favor of his creditor, of land conveyed by the husband to his wife, casts a cloud upon the wife's legal title, because the prevailing title, after sale on execution, would be that one sustained by extraneous facts not apparent upon the record of either chain of title.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 502, 506–516; Dec. Dig. ⟫171 (4).]

3. EXECUTION ⟫172(4)—INJUNCTION—PRIMA FACIE CASE.

In suit by a wife, grantee of her husband's lands, to restrain sale of the property under execution by a creditor of the husband, plaintiff's deed, executed before the creditor secured judgment, makes a prima facie case in her favor.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 525–532; Dec. Dig. ⟫172(4).]

4. FRAUDULENT CONVEYANCES ⬅296—EN-JOINING SALE ON EXECUTION—STATUTE.

Under Rev. St. art. 3967, avoiding voluntary conveyances as to prior creditors, if the creditor proves that he was a creditor of the husband prior to execution of a deed to his wife, the wife's prima facie case, made by her deed, fails, unless she proves that her husband had other property with which to satisfy the debt, either when the deed was executed or the execution was levied.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 891; Dec. Dig. ⬅296.]

5. FRAUDULENT CONVEYANCES ⬅295(1)—EN-JOINING SALE ON EXECUTION—FACTS NECESSARY TO BE PROVEN.

Whether or not the husband was indebted to the creditor, whether the indebtedness existed prior to execution of the gift deed to the wife, whether the husband was insolvent when the deed was executed, and whether he was insolvent at the date of levy of execution, were four distinct facts necessary to be proven.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–869, 872, 873; Dec. Dig. ⬅295(1).]

6. FRAUDULENT CONVEYANCES ⬅287—AVOIDANCE BY CREDITORS—EVIDENCE—CREDITOR'S JUDGMENT—"PRIMA FACIE EVIDENCE."

In suits by prior creditors to avoid a voluntary conveyance because made by an insolvent, the creditor's judgment, though rendered subsequent to the execution of the conveyance, and though the grantee was not a party to the creditor's suit which resulted in the judgment for debt against the grantor, is admissible in evidence to establish the indebtedness, and, as to the grantor, is final and conclusive and cannot be collaterally impeached, but, as against the grantee of the gift conveyance, is only prima facie evidence of the facts it purports to adjudicate. "prima facie evidence" of a fact being such evidence as, in the judgment of the law, is sufficient to establish it, and which, if not rebutted, remains sufficient for that purpose (citing 6 Words and Phrases, First and Second Series, Prima Facie Evidence).

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 835; Dec. Dig. ⬅287.]

7. EVIDENCE ⬅222(8), 230(3)—INJUNCTION.

In a wife's suit to restrain sale on execution of land conveyed her by her husband, neither the declarations of the husband's creditor, nor of defendant, nor those of the husband, made after his execution of the gift deed to the wife, could be introduced in evidence, since declarations and acts of grantors, made after the execution of the grant, are not admissible in evidence against the grantee in suits where the validity of the grant is involved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 794, 837, 838, 846; Dec. Dig. ⬅222(8), 230(3).]

8. JUDGMENT ⬅693—CONCLUSIVENESS—ATTACK BY WIFE.

A judgment against a husband in favor of his creditor was a final judgment, forever determining that the husband was indebted to the creditor, so far as they or their privies were concerned, and the wife, a stranger to the suit, could not, in a direct proceeding, have the judgment set aside and the cause retried.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1216; Dec. Dig. ⬅693.]

9. FRAUDULENT CONVEYANCES ⬅95(1)—RIGHT TO QUESTION—SUBSEQUENT CREDITORS.

A deed from a husband to his wife vested the legal title in the wife, and neither the hus-band nor his subsequent creditors or purchasers could question the wife's deed, which could only be done by the husband's prior creditor, the grantee's title not being a trust for the grantor or his creditors, but a valid legal title against the world, unless there was a prior creditor of the grantor, and the grantee fails to prove the solvency of the grantor either at the date of the gift deed or when execution was levied.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 243–247; Dec. Dig. ⬅95(1).]

10. HUSBAND AND WIFE ⬅47(4)—SEPARATE PROPERTY OF WIFE—GIFT FROM HUSBAND.

Where a husband conveyed land to his wife, it became her separate property, and the husband could not without her consent divest her of her title.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 236; Dec. Dig. ⬅47(4).]

11. VENDOR AND PURCHASER ⬅231(3)—BONA FIDE PURCHASER—RECORD OF SUIT.

Record of the suit between her husband and his creditor was not notice to the wife to whom the husband had conveyed his land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 515; Dec. Dig. ⬅231(3).]

12. JUDGMENT ⬅682(1)—PERSONS CONCLUDED—JUDGMENT DEBTOR'S GRANTEE — EVIDENCE.

In a wife's suit against her husband's creditor to enjoin sale under execution of land conveyed her by her husband, the husband can testify relative to his indebtedness to his creditor, though he is himself bound by the creditor's judgment against him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1203; Dec. Dig. ⬅682(1).]

13. JURY ⬅13(12)—INJUNCTION—ISSUE OF FACT.

In a wife's suit to enjoin sale under execution by her husband's creditor of land conveyed her by her husband, where the wife introduced evidence that defendant was not in fact a creditor of her husband prior to the execution of the gift deed to her, and defendant introduced his petition and judgment against the husband for his debt, thereby introducing prima facie evidence of the fact that he was a prior creditor of the husband, a material issue of fact was presented, which the wife had the legal right to have determined by a jury on trial of the main suit, and not predetermined in an ancillary proceeding by the court in chambers.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 49; Dec. Dig. ⬅13(12).]

14. EXECUTION ⬅172(6)—INJUNCTION—PRESERVATION OF STATUS QUO PENDING LITIGATION.

A wife suing to enjoin sale under execution by her husband's creditor of land conveyed her by her husband had the legal right to have the status of the property involved remain as it was until the suit was determined on its merits.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 536, 537; Dec. Dig. ⬅172(6).]

15. FRAUDULENT CONVEYANCES ⬅213 — CHARACTER OF INDEBTEDNESS—STATUTES.

An indebtedness for services rendered in pursuance of an express or implied contract, or a quantum meruit indebtedness for services, was such an indebtedness as would render a voluntary deed by the debtor void as to his prior creditor, under Rev. St. arts. 3966, 3967, avoiding conveyances made to defraud credi-

tors, and, as to prior creditors, avoiding voluntary conveyances.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 635, 636, 638; Dec. Dig. ⊙⟲213.]

On Motion for Rehearing.

16. STATUTES ⊙⟲181(2)—CONSTRUCTION.

A statute cannot be given a construction that will render it futile and purposeless when it can be otherwise construed.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 263; Dec. Dig. ⊙⟲181(2).]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Wilhemina Stolte and another against M. Karren and another. From a judgment in part for defendants and in part for plaintiffs, plaintiffs appeal. Judgment, so far as for defendants, reversed, with instruction, and cause remanded.

Carlos Bee, of San Antonio, for appellants. L. H. Porter and Lewright & Douglas, all of San Antonio, for appellees.

SWEARINGEN, J. The appellant Wilhemina Stolte, joined pro forma by her husband, Christian Stolte, filed suit against appellees, M. Karren and John E. Trainer, constable, and prayed for a temporary injunction to restrain the sale under execution of certain property levied upon as the property of Christian Stolte, claimed by appellant as her separate property. Appellant also prayed to restrain the sale of other property claimed to be homestead and exempt. Appellees answered that the Smith tract was a donation to the appellant Wilhemina Stolte by Christian Stolte, her husband, and that appellee Karren was a creditor of the donor prior to the date of the execution of the gift deed, which was, therefore, void; and further that the deed was made with intent to defraud appellee Karren. Appellees further alleged that the indebtedness had been merged into a judgment subsequent to the date of the gift deed. The court heard evidence introduced by both parties and granted a temporary injunction restraining the sale of the homestead tract, and refused to enjoin the sale of the Smith tract. However, the court suspended his order refusing the injunction of the sale of the Smith tract pending an appeal to this court. The evidence shows the following facts:

Christian Stolte purchased the Smith tract March 12, 1915, the consideration being property conveyed in exchange. He executed a gift deed to his wife, Wilhemina Stolte, March 19, 1915.

Appellee M. Karren, on March 12, 1915, made claim from Christian Stolte of a debt due on that day as commission of 2½ per cent. for acting as broker and effecting an exchange of Christian Stolte's property, conveyed as consideration for the Smith tract.

At that time Christian Stolte denied the indebtedness; told Karren he owed him nothing. On April 3, 1915, M. Karren sued Christian Stolte for the indebtedness, alleging in detail the nature of the indebtedness. Citation was duly and properly served upon Christian Stolte. Christian Stolte took the citation to his attorney as soon as it was served on him. No answer was filed. Judgment by default was rendered by the court, and in May, 1916, made final. In August, 1916, the judgment creditor, M. Karren, had the execution issued and delivered to the constable, who levied upon the Smith tract and homestead, and was proceeding to sell both tracts when this present suit was filed. Christian Stolte testified at the injunction hearing for appellant that he had never been indebted to Karren.

Appellants' first assignment complains that the court committed error in its judgment denying an injunction restraining the sale of the Smith tract claimed by appellant Wilhemina Stolte as her separate property, and, as a reason why it was error, recites that the evidence conclusively vested the legal title in Wilhemina Stolte on the 19th of March, 1915, and that defendants were attempting to sell the separate property of Wilhemina Stolte to satisfy a judgment for debt rendered in May, 1916, in favor of M. Karren, one of the appellees, against Christian Stolte; that appellant Wilhemina was not a party to the suit which resulted in the judgment for debt. Under this assignment it is contended by appellees that the remedy of injunction should be denied because appellant has an adequate remedy at law which precludes the equitable remedy.

[1] This contention is in accord with the rules prevailing in Texas until the statute (article 4643) enlarged the remedy. This article of the statutes was construed in the case of Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994, in accordance with the views herein expressed. Allen v. Carpenter, 182 S. W. 430.

[2, 3] It is further contended by appellees that the sale by virtue of the execution to satisfy the judgment against Christian Stolte in favor of M. Karren would not cast a cloud upon appellant's legal title. We are of the opinion that it would, for the reason that the prevailing title after the sale under the execution would be that one sustained by extraneous facts not apparent upon the record of either chain of title. Texas Mort. Co. v. Worsham, 5 Tex. Civ. App. 245, 23 S. W. 938. For instance, appellant Wilhemina Stolte's deed makes a prima facie case in her favor.

[4] If, under article 3967, R. C. S., appellee proves that he was a creditor of the grantor in the deed prior to its execution, the prima facie case of the grantee would

fail unless the grantees proved that the grantor had other property with which to satisfy the debt, either when the gift conveyance was executed or when the execution was levied.

[5] Whether or not the grantor, Christian Stolte was (a) indebted to appellee (b) and the indebtedness existed prior to the execution of the gift deed, and (c) the grantor was insolvent at the time of the execution of the deed, and (d) was insolvent at the date of the levy of the execution, are four distinct facts necessary to be proven by evidence not of record. Maddox v. Summerlin, 47 S. W. 1022; Id., 92 Tex. 486, 49 S. W. 1033, 50 S. W. 567.

We are of the opinion that the sale under the execution might cast a cloud upon appellant's title, and that an injunction was an appropriate remedy. An examination of the transcript and statement of facts leads us to believe that the trial court did not refuse the injunction for the reasons as contended by appellee, viz. that a sale would not cast a cloud, and that injunction was not an appropriate remedy. On the other hand, we do not believe the undisputed evidence shows that appellant Wilhemina Stolte had an absolute legal title unaffected by the statute of frauds as contended by appellant. It seems probable to us that the trial court considered that the judgment and execution against Christian Stolte in favor of M. Karren conclusively established the four facts necessary for appellee's cause, viz.: (1) That Christian Stolte was indebted to M. Karren; (2) that the indebtedness existed prior to the execution of the gift deed; (3) that Christian Stolte, the grantor of the gift deed, was insolvent at the time of the execution of the gift deed; and (4) that the grantor was insolvent when the execution was levied—and further considered that the creditor's judgment was binding upon appellant Wilhemina Stolte, though she was not a party to that suit, thus in effect holding that the creditor's judgment could not be collaterally attacked even by a stranger, in suits like the one at bar. There is much apparent authority for such an opinion. The question, what effect will be given to an "in personam" judgment for debt used to establish the status of prior indebtedness as a basis for a suit to avoid a gift deed has been considered by the courts of England and America many times since the passage of the English statutes of 13 & 27 Elizabeth, from which our articles 3966 and 3967 were derived. And these many decisions by their conflicts present an interesting illustration of the confusion of clear legal principles made possible by the double meaning of words in our language and the absence or presence of various facts in each individual case. Some courts of unquestioned ability hold that the judgment cannot be admitted at all in the second suit.

Inman v. Mead, 97 Mass. 310; Yeend v. Weeks, 104 Ala. 331, 16 South. 165, 53 Am. St. Rep. 50; Hartman v. Weiland, 36 Minn. 223, 30 N. W. 815. Others of equal eminence hold that the judgment can be introduced in the second suit for any purpose and is prima facie evidence. Finch v. Kent, 24 Mont. 268, 61 Pac. 657; Hinde's Lessee v. Longworth, 24 U. S. (11 Wheat.) 199, 6 L. Ed. 454. Many of the decisions hold that the judgment rendered subsequent to the gift conveyance establishes the indebtedness, and that the grantee of the gift conveyance cannot inquire into its correctness except for fraud or collusion; but does not establish that the indebtedness existed prior to the execution of the gift deed. Schmitt v. Dahl, 88 Minn. 506, 93 N. W. 665, 67 L. R. A. 590.

[6] The correct rule we believe to be: That in suits by prior creditors to avoid a gift conveyance because made by an insolvent, the creditor's judgment, though rendered subsequent to the execution of the gift conveyance, and though the grantee in the gift conveyance was not a party to the creditor's suit which resulted in the judgment for debt against the grantor, is admissible in evidence for the purpose of establishing the indebtedness, and as to the grantor is final and conclusive and cannot be collaterally impeached; but, as against the grantee of the gift conveyance, is only prima facie evidence of the facts it purports to adjudicate. Parks v. Worthington, 101 Tex. 505, 109 S. W. 909; Hinde's Lessee v. Longworth, 24 U. S. (11 Wheat.) 199, 6 L. Ed. 454; Bump on Fraudulent Conveyances (4th Ed.) § 585; 2 Black on Judgments, § 605, note 490; McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260. Against the grantor, the judgment is conclusive. Against the grantee, it is only prima facie evidence. "Prima facie evidence of a fact," says Mr. Story, "is such evidence as, in the judgment of the law, is sufficient to establish the fact, and, if not rebutted, remains sufficient for that purpose." 6 Words and Phrases, 5549.

To admit a judgment in personam as prima facie evidence in a suit with a stranger to that judgment is an exception to the established rule of law, which is that, as to parties and privies, the judgment is final and cannot be collaterally attacked, but, as to strangers thereto, the judgment can be collaterally attacked. Judgments in rem, or upon public matters, or in prize courts, are final against the world. But judgments "in personam" bind only parties and privies. 1 Bl. on Judgments, § 245; Read v. Allen, 56 Tex. 180; Bradford v. Knowles, 78 Tex. 109, 14 S. W. 307; Cole v. Terrell, 71 Tex. 557, 9 S. W. 668; McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260.

Why an exception to the general rule is made, so that judgments in personam are admissible in evidence as prima facie evi-

dence of the facts determined therein against the grantee of a gift conveyance, a stranger to the judgment, in suits by prior creditors to avoid the gift conveyance, is not clear. We have been unable to find a sufficient reason assigned in any of the text-books or decisions upon the subject in our hasty, though somewhat extensive, research. The reason assigned in note 2, p. 158, in Bigelow on Fraudulent Conveyances (Revised Ed. 1911) consists of a quotation from Mr. Justice Holmes in Brigham v. Fayerweather, 140 Mass. 411, 5 N. E. 265. An examination of that case will disclose that the distinguished judge held that the judgment was binding only upon the parties to that judgment, designated in the opinion as A. and B. Then the court says:

"On the contrary, those judgments, such as sentences of prize courts, to which the greatest effect has been given in collateral proceedings, are said to be conclusive evidence of the facts upon which they proceed only against parties who were entitled to be heard before they were rendered. The Mary, 9 Cranch, 126, 146, 3 L. Ed. 678; Salem v. Eastern R. Co., 98 Mass. 431, 449, 96 Am. Dec. 650; Baxter v. New England Ins. Co., 6 Mass. 277, 286, 4 Am. Dec. 125; Whitney v. Walsh, 1 Cush. (Mass.) 29, 48 Am. Dec. 590."

The New York cases are not relevant to construction of the Texas statute, article 3967. No Texas case holds that such a subsequent judgment is more than prima facie evidence. On the contrary, Mr. Justice Williams, in Parks v. Worthington, 101 Tex. 505, 109 S. W. 909, holds that if such a judgment is admissible at all in suits like the one here considered, it is only prima facie, and proceeds in the case being considered to determine that the uncontradicted creditor's judgment introduced in evidence did not warrant a finding in favor of the judgment creditor.

[7] Furthermore, in addition to the general rule that strangers to a judgment "in personam" are not bound thereby, there is the rule, thoroughly established, that declarations and acts of grantors made after the execution of the grant are not admissible in evidence against the grantee in suits where the validity of the grant is involved. De Garca v. Galvan, 55 Tex. 57. The allegations of the petition in the suit for debt by appellee Karren against Christian Stolte, to which appellant Wilhemina Stolte was not a party, were certainly declarations made after the gift deed. Date of gift deed March 19, 1915, Karren petition filed April 3, 1915. Judgment rendered May, 1916.

[8] The judgment for debt was by default. The defendant therein, Christian Stolte, never answered and never appeared. Upon this lack of diligence or failure to act on the part of Christian Stolte, the judgment was permitted. Neither the declarations of Karren nor those of Christian Stolte made after the execution of the gift deed could be introduced in evidence in the suit at bar. What law effects the strange alchemy by which these subsequent declarations of Karren and the negligence of Christian Stolte are conclusive against a stranger to that suit? Wilhemina Stolte was not a party to that suit; had no right to introduce evidence, nor cross-examine; no right of appeal; no right to attack it for fraud in a direct proceeding, because not a party to it. It was and is a final judgment forever determining that Christian Stolte is indebted to M. Karren, so far as they or their privies are concerned, and the stranger, Wilhemina Stolte, could not in direct proceeding have the judgment set aside and the cause retried.

[9] The gift deed vested the legal title in Wilhemina Stolte (Lewis v. Simon, 72 Tex. 470, 10 S. W. 554; De Garca v. Galvan, 55 Tex. 56), and neither her husband nor his subsequent creditors or purchasers could question her deed. Only the prior creditor of the grantor could question its validity, and it would not be void even at the suit of the prior creditor if the grantee proved that the grantor was solvent at the date of the gift deed or was solvent when the execution was levied. Maddox v. Summerlin, 47 S. W. 1020.

[10] The grantee's title, under our statute and decisions, was not a trust for the grantor or his creditors, but was a valid legal title against the world unless, in truth and in fact, there was a prior creditor of the grantor and the grantee failed to prove the solvency of the grantor either at the date of the gift deed or when the execution was levied. If a valid prior debt against the grantor be proven by the prior creditor, and solvency is not proven by the grantee, then, and in that event only, will grantee's gift deed be void and as if it had never been executed. Maddox v. Summerlin, 92 Tex. 487, 49 S. W. 1033, 50 S. W. 567. The property became the separate property of the wife, and the husband could not without her divest her of her title. Williamson v. Conner, 92 Tex. 583, 50 S. W. 697.

Stability and certainty of land titles is of greater moment than the prevention of inconvenience to creditors. In this case the gift deed was put of record March 19, 1915, notice of which the creditor had. How simple for him to have joined the grantee in the suit filed by him on April 3, 1915, and thus have but one trial of the merits of his claimed indebtedness. This was the course pursued in Cole v. Terrell, 71 Tex. 557, 9 S. W. 668.

[11] On the other hand, the record of the suit between the grantor and Karren was not notice to the grantee, and it would be well-nigh impossible for the grantee or her assigns to know when and where judgments for debt might be rendered against the grantor.

It is our conclusion that the judgment in favor of the creditor, Karren, was admissible in evidence and was prima facie evidence of the facts necessary for that judgment; that unless rebutted by other evidence it would be sufficient to avoid the gift deed. But it is also our opinion that it is only prima facie

evidence of the facts necessary to that judgment and that Wilhemina Stolte has the right to introduce evidence in the suit at bar for the purpose of proving that there was no indebtedness against Christian Stolte in favor of M. Karren, or that the indebtedness did not exist prior to the gift deed and thus destroy the effect of that judgment in so far as it affects her and her property. In short, Wilhemina Stolte has the legal right to prove in the case at bar that Christian Stolte was not indebted to M. Karren in any sum for anything at any time.

[12] Authority can be found for the objection that Christian Stolte will not be permitted to deny the indebtedness merged into the judgment against him. But in our opinion he can testify to the truth in the suit at bar, notwithstanding that he is bound by that judgment himself.

[13, 14] The record before us shows that appellant introduced evidence that appellee was not in fact a creditor of Christian Stolte prior to the execution of the gift deed; that appellee introduced the judgment and petition, the basis of the judgment, and thereby introduced prima facie evidence of the fact that appellee was a prior creditor of the grantor. This presents a material issue of fact which appellant has the legal right to have determined by a jury upon the trial of the main suit and not predetermined in an ancillary proceeding by the court in chambers. She has the further legal right to have the status of the property involved in this litigation remain as it is until this suit is determined upon its merits. The following authorities contain discussions of the admissibility of subsequent judgments in suits of the character of the instant suit: Hoerr v. Meihofer, 77 Minn. 228, 79 N. W. 964, 77 Am. St. Rep. 674; State Ins. Co. v. Prestage, 116 Iowa, 466, 90 N. W. 62; Willett v. Malli, 65 Iowa, 675, 22 N. W. 922; Homestead M. Co. v. Reynolds, 30 Colo. 330, 70 Pac. 422; Tarbell v. Jewett, 129 Mass. 457; Simmons v. Shelton, 112 Ala. 284, 21 South. 309, 57 Am. St. Rep. 39; Perrine v. Perrine (N. J. Ch.) 50 Atl. 694; Sullivan v. Ball, 55 S. C. 343, 33 S. E. 486; Snodgrass v. B. B., 25 Ala. 161, 60 Am. Dec. 505; Hunsinger v. Hofer, 110 Ind. 390, 11 N. E. 463; Curry v. Curry (Pa.) 11 Atl. 198; Suber v. Chandler, 36 S. C. 344, 15 S. E. 426; Mattingly v. Nye, 75 U. S. (8 Wall.) 370, 19 L. Ed. 380; 67 L. R. A. 590, note citing many cases. Appellants' first assignment is sustained.

[15] Appellants' second assignment complains of error by the court in the judgment because the indebtedness was not the character of indebtedness required by the statute (articles 3966 and 3967) to render the gift deed void. There is no merit in this assignment, for if there was any prior indebtedness at all it was for services rendered by appellee and received by the grantor, Christian Stolte, in pursuance either of an express or implied contract, or was a quantum meruit indebtedness, any of which, if prior to the gift deed, and if the grantor was insolvent at date of gift deed and at time of levy of execution, or intended to hinder the creditor, would constitute the character of indebtedness sufficient to avoid the deed. Bigelow on Fraudulent Conveyances, p. 163, § 3; Holden v. McLaury, 60 Tex. 228.

The second assignment is overruled.

For the reasons given in our discussion of the first assignment the order of the trial court, in so far as it refuses an injunction restraining the sale of the Smith tract of land, should be reversed and the trial court instructed to order the issuance of a temporary injunction restraining the sale of said Smith tract of land as well as the homestead, sale of which was enjoined in the order appealed from.

Reversed and remanded, with instructions.

## On Motion for Rehearing.

It is contended by counsel for appellees in the motion for rehearing, supported by an elaborate written argument, that the former opinion in the instant case is error because the facts alleged by appellant are insufficient to entitle her to an injunction. The contention is founded upon the mistaken idea that the power to grant an injunction in this case is limited by the rule established in Texas prior to the adoption in 1909 of the amended article 4643. The law announced by those old cases is thus clearly expressed in the case of Mann v. Wallis, Landes & Co., 75 Tex. 613, 12 S. W. 1124:

"While there is some conflict of decision, the great weight of authority sustains the proposition that a sale of land under execution will not be enjoined at the instance of one not a party to the execution on the sole ground that such third person claims to own the property. To entitle such a person to injunction he must show that his right will be injuriously affected, or that some irreparable injury will follow if the sale be made. This is the settled rule of this court. Carlin v. Hudson, 12 Tex. 203 [62 Am. Dec. 521]; Henderson v. Morrill, 12 Tex. 1; Whitman v. Willis, 51 Tex. 432; Purinton v. Davis, 66 Tex. 456 [1 S. W. 343]; Spencer v. Rosenthall, 58 Tex. 4. It was incumbent on appellant to allege such facts as would show if the sale proceeded that he had not a clear and adequate remedy at law for the enforcement of any right he may have."

Supporting this rule, counsel for appellee cited Texas Land & Mortgage Co. v. Worsham, 5 Tex. Civ. App. 245, 23 S. W. 938; Brown v. Ikard, 33 Tex. Civ. App. 661, 77 S. W. 967; Chamberlain v. Baker, 28 Tex. Civ. App. 499, 67 S. W. 532; McGoffin v. San Antonio Brewing Association, 84 S. W. 843; Latham Co. v. Shelton, 57 Tex. Civ. App. 122, 122 S. W. 941; Huggins v. White, 7 Tex. Civ. App. 563, 27 S. W. 1066.

All of the above cases were decided prior to 1909, the date of the amended statute of 1909. However, while the rule stated was the settled law in Texas prior to the 1909

amendment, there was a well-established exception to it as clearly announced in Gardner v. Douglass, 64 Tex. 76; Huggins v. White, 7 Tex. Civ. App. 563, 27 S. W. 1066; Van Ratcliff v. Call, 72 Tex. 492, 10 S. W. 578; Barr v. Simpson, 54 Tex. Civ. App. 105, 117 S. W. 1041; Texas Land & Mort. Co. v. Worsham, 5 Tex. Civ. App. 245, 23 S. W. 938.

The facts of the case at bar bring this case within the recognized exception to the rule. The exception was that an injunction could be granted to enjoin the sale under execution, where extraneous evidence was required to establish the superior title, for instance, where the property was a homestead, or the property was the separate property of the wife, but did not so appear upon the deed record, or where the deed had not been placed of record. In the case at bar the deed to Mrs. Stolte was a gift from her husband. The execution was issued under a judgment against her husband, and the judgment showed on its face that it was a debt against the husband existing prior to the gift deed. This judgment was prima facie evidence of the facts shown therein. The statute declared the gift deed void if there was a prior debt due by her husband. After sale under execution, the issue, which was the superior title, would necessarily depend upon evidence dehors the record.

However, a discussion of the old rule and its exceptions is now purely academic and interesting only as an incident of the history of the evolution of law, for the Legislature in 1909 amended the statute pertaining to injunctions by adding to the third paragraph of article 4643 a clause that expressly and completely changed the old rule, destroyed the force of all previous decisions upon the subject, and substituted therefor a new and distinct rule, in the following words:

"Judges of the district court * * * may grant writs of injunctions * * * where a cloud would be put on the title of real estate being sold under an execution against a person, * * * having no interest in such real estate subject to the execution at the time of the sale * * * irrespective of any legal remedy at law."

The phrase, "cloud would be put on the title," as used in the statute, means a claim of a right in lands. 5 R. C. L. 634. Since the enactment of the amendment, the density of the cloud can make no difference in the right to the injunction. 2 Words and Phrases, 1233.

[16] It is true that in the Worsham Case there is defined the density of the cloud on the title that was necessary in order to invoke the equity jurisdiction under the exception to the old rule denying aid of equity where there is a legal remedy at law. But when the old rule was abolished by the statute the density of the cloud became immaterial. Any cloud upon the title could be prevented by injunction irrespective of any legal remedy at law. The proposition that the Legislature, by the use of the phrase, "cloud would be put on the title," meant such a dense cloud as was declared in the Worsham Case to be sufficient to justify an injunction, and thereby left the law as it was prior to the statute, is untenable. Such an interpretation would make the amendment fruitless and useless. A statute cannot be given a construction that would render it futile and purposeless, when it can be otherwise construed. That the Legislature did not intend to make a meaningless and purposeless change by the amendment is clearly shown by the language used in the emergency clause of the same act, contained in section 6, as follows:

"The fact that there is now no well-defined and settled statutes on law and equity to properly prevent a cloud on title of real estate, * * * being sold under an execution against a person * * * having no interest in such real estate * * * without resorting to the legal remedy at law, creates an emergency and an imperative necessity * * * that this act take effect * * * from and after its passage." Gen. Laws of Texas, 31st Leg. 1909, p. 356; Winkie v. Conatser, 171 S. W. 1017; S. K. McCall Co. v. Page, 155 S. W. 655.

After this act became the law the court, in the case of Latham Co. v. Shelton, 57 Tex. Civ. App. 122, 122 S. W. 941, recognized that it changed the old rule in force up to that time.

The only other decision cited by appellee which was rendered after 1909 was the case of Ward v. Caples, 170 S. W. 816, but inasmuch as that case has not even the remotest relevancy to the principle of law here involved, its citation must have been an inadvertence.

The motion for rehearing is overruled.